United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SIONE S. HOKO, ) | Case No.: 14-CV-01327-LHK |
| ) | |
| Plaintiff, ) | |
| ) | ORDER GRANTING DEFENDANT'S |
| v. ) | MOTION TO DISMISS WITHOUT |
| ) | PREJUDICE |
| TRANSIT AMERICA SERVICES, ) | |
| ) | |
| Defendant. ) | |
| ) | |

Plaintiff Sione Hoko ("Hoko"), proceeding pro se, brings suit against Defendant Transit America Services, Inc. ("TASI") under Title VII of the Civil Rights Act of 1964 ("Title VII") alleging disparate treatment on the basis of national origin and race, and retaliation. TASI moves to dismiss Hoko's complaint for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) and for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). TASI also moves in the alternative for a more definite statement pursuant to Federal Rule of Civil Procedure 12(e). Pursuant to Civil Local Rule 7-1(b), the Court finds this matter suitable for decision without oral argument and VACATES the hearing scheduled for August 21, 2014, at 1:30 PM. The Case Management Conference set for August 21, 2014 remains as set. Having considered the briefing and relevant law, the Court GRANTS TASI's Motion to Dismiss with leave to amend, and DENIES as moot TASI's Alternative Motion for a More Definite Statement.

I.      BACKGROUND

1

United States District Court
For the Northern District of California

On April 17, 2006, Hoko, a Pacific Islander, began his employment for the CalTrain Commuter Rail System ("Caltrain") as a conductor. ECF No. 1 at 3 ("Compl."). On May 26, 2012 TASI received a five-year contract to provide the daily staffing and operations management for Caltrain. Compl. at 3. TASI asserts (and Hoko does not deny) that TASI is a signatory to a labor collective bargaining agreement ("CBA") with the United Transportation Union ("Union"). ECF No. 11; ECF No. 11-1 ("CBA"). As Hoko is represented by the Union, Hoko's employment with TASI is subject to the CBA. Mot. at 10.

Sometime around July 2012, approximately two months after assuming the management of Caltrain, TASI initiated a new program to allow employees in Hoko's department ("the extra board department") to apply for extra shifts through TASI's "Hold Down job program." Compl. at 3 Sometime prior to July 31, 2012, both Jackie Britt ("Britt"), "a white woman" who had neither the "qualif[ications]" nor "seniority" to hold the job, and Robert Bermudez ("Bermudez"), who did not have the "seniority" to hold the job, were awarded extra shifts through the program. *Id.* at 4. Hoko, despite being "qualified" and having "the number one seniority," was "never given the opportunity to apply" for extra shifts. *Id.* Furthermore, TASI "concealed the availability of the job opening" from Hoko. *Id.* at 16. Following the advice of a co-worker, on or around August 1, 2012, Hoko left a message for TASI supervisor Justin Wilson ("Wilson") stating Hoko's interest in displacing Britt from the extra shifts. *Id.* A few days later, Wilson informed Hoko that Hoko's request to displace Britt was denied. *Id.*

On August 6, 2012, Hoko filed an official complaint with TASI management concerning the extra shifts awarded to both Britt and Bermudez. *Id.* During a follow-up meeting prior to August 12, 2012 with TASI management concerning this complaint, Wilson informed Hoko that "Hoko's claim would have to be approved by his boss." *Id.* at 5. However, Hoko later learned that Michael Bird, "a white employee[]," had brought forward a similar claim which "was actually approved by Justin Wilson." *Id.*

On August 12, 2012, Wilson informed Hoko that his claim was under investigation. *Id.* at 1. After hearing nothing for some time, on October 11, 2012 Hoko sent an email to Dewayne Quock ("Quock") in TASI's Human Resources department to "express to Dewayne that TASI ha[d]

**United States District Court**
For the Northern District of California

1    violated his Federally Protected Rights under the Title VII of the Civil Rights Act of 1964" and

2    that Wilson had engaged in "discriminatory behavior." *Id.* at 6-9.

3          On November 8, 2012, Hoko met with Quock who presented Hoko with a settlement

4    agreement that would bar Hoko from later bringing that same discrimination claim. *Id.* at 7. Hoko

5    expressed to Quock that the settlement document prepared by TASI was "discriminatory" and

6    refused to sign it. *Id.* at 16. In retaliation for refusing to sign the settlement document, TASI

7    proceeded to engage in various adverse employment actions against Hoko including "coercing Mr.

8    Hoko . . . to sign the [settlement] document," denying Hoko's "Care Program Time Slips"[1] claims,

9    ordering that "Hoko get drug tested," and "promoting Mr. More to Conductor in order to prevent

10   Mr. Hoko from working during the day shift on a big money job[.]" *Id.* at 9-17.

11         In May 2013, Hoko filed charges with the Equal Employment Opportunity Commission

12   ("EEOC") alleging discriminatory conduct. *Id.* at 2, 12. Hoko also brought suit against TASI under

13   Title VII alleging disparate treatment on the basis of national origin and race, and retaliation.[2] *See*

14   *generally id.*

15         TASI filed a motion to dismiss on April 21, 2014. ECF No. 10 ("Mot."). Hoko filed his

16   opposition on May 5, 2014. ECF No. 14 ("Opp'n"). TASI filed a reply on August 7, 2014. ECF

17   No. 20 ("Reply").

18   **II.    LEGAL STANDARDS**

19         **A.    Motion to Dismiss**

20              **1.    Rule 12(b)(1)**

21         A defendant may move to dismiss an action for lack of subject matter jurisdiction pursuant

22   to Federal Rule of Civil Procedure 12(b)(1). A motion to dismiss for lack of subject matter

23   jurisdiction will be granted if the complaint on its face fails to allege facts sufficient to establish

24

25   ---
     [1] The Complaint, read together with the CBA, suggests that TASI operates the Care Program to
     provide counseling and paid time off for employees following "critical incidents" (ECF 11-1 at 83)
26   and "Rail Road Fatalit[ies]." Compl. at 12.
     [2] *See* 42 U.S.C. § 2000e-2(a) ("It shall be an unlawful employment practice for an employer . . . to
27   discriminate against any individual . . . because of such individual's race, . . . national
     origin . . . ."); 42 U.S.C. § 2000e-3(a) ("It shall be an unlawful employment practice for an
28   employer to discriminate against any of his employees . . . because he has opposed
     any . . . unlawful employment practice . . . .").

Case No.: 14-CV-01327-LHK
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS WITHOUT PREJUDICE

United States District Court
For the Northern District of California

1  subject matter jurisdiction. *See Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n.2 (9th

2  Cir. 2003). A Rule 12(b)(1) motion to dismiss tests whether a complaint alleges grounds for federal

3  subject matter jurisdiction. If the plaintiff lacks standing under Article III of the U.S. Constitution,

4  then the court lacks subject matter jurisdiction, and the case must be dismissed. *See Steel Co. v.*

5  *Citizens for a Better Env't*, 523 U.S. 83, 101-02 (1998).

6  ## 2.    Rule 12(b)(6)

7  Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss an

8  action for failure to allege "enough facts to state a claim to relief that is plausible on its face." *Bell*

9  *Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff

10  pleads factual content that allows the court to draw the reasonable inference that the defendant is

11  liable for the misconduct alleged. The plausibility standard is not akin to a 'probability

12  requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."

13  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted). For purposes of ruling on a

14  Rule 12(b)(6) motion, the Court "accept[s] factual allegations in the complaint as true and

15  construe[s] the pleadings in the light most favorable to the non-moving party." *Manzarek v. St.*

16  *Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Moreover, pro se pleadings are

17  to be construed liberally. *Resnick v. Hayes*, 213 F.3d 443, 447 (9th Cir. 2000) ("[I]n general, courts

18  must construe pro se pleadings liberally.").

19  However, a court need not accept as true allegations contradicted by judicially noticeable

20  facts, *Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000), and a "court may look beyond

21  the plaintiff's complaint to matters of public record" without converting the Rule 12(b)(6) motion

22  into a motion for summary judgment, *Shaw v. Hahn*, 56 F.3d 1128, 1129 n.1 (9th Cir. 1995). A

23  court is also not required to " 'assume the truth of legal conclusions merely because they are cast in

24  the form of factual allegations.' " *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per

25  curiam) (quoting *W. Min. Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981)). Mere "conclusory

26  allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss."

27  *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004); *see also Iqbal*, 556 U.S. at 678.

28  Furthermore, "a plaintiff may plead herself out of court" if she "plead[s] facts which establish that

4

[s]he cannot prevail on h[er] . . . claim." *Weisbuch v. Cnty. of L.A.*, 119 F.3d 778, 783 n.1 (9th Cir. 1997) (internal quotation marks and citation omitted).

### B.      Leave to Amend

If the Court determines that the complaint should be dismissed, the Court must then decide whether to grant leave to amend. Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "shall be freely given when justice so requires," bearing in mind "the underlying purpose of Rule 15 . . . [is] to facilitate decision on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (internal quotation marks and citation omitted). Furthermore, the Court "has a duty to ensure that pro se litigants do not lose their right to a hearing on the merits of their claim due to ignorance of technical procedural requirements." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). Nonetheless, a court "may exercise its discretion to deny leave to amend due to 'undue delay, bad faith or dilatory motive on part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . . ,[and] futility of amendment.' " *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892-93 (9th Cir. 2010) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)) (alterations in original).

### C.      Request for Judicial Notice

The Court generally may not look beyond the four corners of a complaint in ruling on a Rule 12(b)(6) motion, with the exception of documents incorporated into the complaint by reference, and any relevant matters subject to judicial notice. *See Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007); *Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001). Under the doctrine of incorporation by reference, the Court may consider on a Rule 12(b)(6) motion not only documents attached to the Complaint, but also documents whose contents are alleged in the complaint, provided the Complaint "necessarily relies" on the documents or contents thereof, the document's authenticity is uncontested, and the document's relevance is uncontested. *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010); *see Lee*, 250 F.3d at 688-89. The purpose of this rule is to "prevent plaintiffs from surviving a Rule 12(b)(6) motion by deliberately

1   omitting documents upon which their claims are based." *Swartz*, 476 F.3d at 763 (internal

2   quotation marks omitted).

3          In addition, in considering a Rule 12(b)(1) motion, the Court "is not restricted to the fact of

4   the pleadings, but may review any evidence, such as affidavits and testimony, to resolve factual

5   disputes concerning the existence of jurisdiction." *McCarthy v. United States*, 850 F.2d 558, 560

6   (9th Cir. 1988) (citing *Land v. Dollar*, 330 U.S. 731, 735 n. 4 (1947)).

7          The Court also may take judicial notice of matters that are either (1) generally known

8   within the trial court's territorial jurisdiction or (2) capable of accurate and ready determination by

9   resort to sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b). Proper

10  subjects of judicial notice when ruling on a motion to dismiss include legislative history reports,

11  *see Anderson v. Holder*, 673 F.3d 1089, 1094, n.1 (9th Cir. 2012); court documents already in the

12  public record and documents filed in other courts, *see Holder v. Holder*, 305 F.3d 854, 866 (9th

13  Cir. 2002); and publically accessible websites, *see Caldwell v. Caldwell*, 2006 WL 618511, at *4

14  (N.D. Cal. Mar. 13, 2006); *Wible v. Aetna Life Ins. Co.*, 375 F.Supp.2d 956, 965-66 (C.D. Cal.

15  2005).

16  **III.      DISCUSSION**

17          **A.      Judicial Notice**

18          The Court takes judicial notice of the collective bargaining agreement which was submitted

19  to the Court by TASI. *See* ECF No. 11-1 ("CBA"). While TASI did not file a request for judicial

20  notice with respect to the CBA, this Court has discretion to sua sponte take judicial notice. *See* Fed.

21  R. Evid. 201(c)(1) ("The court may take judicial notice on its own"). In considering a Rule

22  12(b)(1) motion, the Court "is not restricted to the fact of the pleadings, but may review any

23  evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of

24  jurisdiction." *McCarthy*, 850 F.2d at 560 (citation omitted). In addition, under the doctrine of

25  incorporation by reference, the Court may consider on a Rule 12(b)(6) motion not only documents

26  attached to the Complaint, but also documents whose contents are alleged in the Complaint,

27  provided the Complaint "necessarily relies" on the documents or contents thereof, the document's

28  authenticity is uncontested, and the document's relevance is uncontested. *Coto Settlement v.*

6

1    *Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010); *see Lee*, 250 F.3d at 688-89. Here, the Complaint

2    frequently references the CBA. *See, e.g.*, Compl. at 3 ("the UTU/TASI contract was

3    disregarded");[3] *id.* at 4 ("Pursuant to employment policies and procedures promulgated by

4    UTU/TASI contract, Mr. Hoko filed a timely claim"). In addition, the document's authenticity and

5    relevance is uncontested in Plaintiff's opposition. *See* ECF No. 14. Thus, under the incorporation

6    by reference doctrine, the Court takes judicial notice of the CBA.

7         **B.     Motion to Dismiss**

8         TASI moves for dismissal on two grounds. First, TASI argues Hoko's claims should be

9    dismissed for lack of subject matter jurisdiction. Mot. at 3. Second, TASI argues Hoko has failed to

10   state a claim for either disparate treatment or retaliation under Title VII. *Id.* The Court addresses

11   each of TASI's arguments in turn.

12         **1.     Subject Matter Jurisdiction**

13        TASI moves to dismiss Hoko's claims for lack of subject matter jurisdiction. TASI argues

14   that TASI is a signatory to the CBA with the United Transportation Union, and that Hoko failed to

15   exhaust the CBA's binding internal grievance procedure for his claims. Mot. at 8.[4] TASI also

16   claims that the period for Hoko to file a timely grievance through the Union has expired. *Id.* Hoko

17   responds that he "has exhausted all CBA grievance procedure[s] on September 06, 2013 [sic]."

18   Opp'n at 5. The Court rejects TASI's argument.

19        In support of its argument that Hoko needed to exhaust the grievance procedures

20   established by the CBA before obtaining judicial review, TASI relies on *Vaca v. Sipes*, which held

21   that before bringing suit against an employer *for breach of a collective bargaining agreement*, "the

22   employee must at least attempt to exhaust exclusive grievance and arbitration procedures

23   established by the bargaining agreement." 386 U.S. 171, 184 (1967) (citing *Republic Steel Corp. v.*

24   *Maddox*, 379 U.S. 650, 652 (1965) ("[A]s a general rule . . . individual employees wishing to assert

25   contract grievances must attempt use of the contract grievance procedure agreed upon by employer

---

[3] In the Complaint, Hoko refers to the CBA as the "UTU/TASI contract." Compl. at 3.

[4] TASI cites to Part IV of the CBA, which requires that "any dispute or controversy with respect to the interpretation, application, or enforcement of the provisions of this Agreement which has not been resolved by the parties within thirty days may be submitted by either party to a Special Board of Adjustment for final and binding decision thereon[.]" Mot. at 8 (citing CBA at 11).

Case No.: 14-CV-01327-LHK
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS WITHOUT PREJUDICE

**United States District Court**
For the Northern District of California

1   and union as the mode of redress")). TASI's argument is misplaced because *Vaca* held that this

2   rule applies specifically to employees' *breach of contract* claims. *Vaca*, 386 U.S. at 184-185

3   (noting the issue before the Court was to "determine under what circumstances the individual

4   employee may obtain judicial review of his breach-of-contract claim despite his failure to secure

5   relief through the contractual remedial procedures."); *see also Carr v. Pac. Maritime Ass'n,* 904

6   F.2d 1313, 1317 (9th Cir. 1990) ("As a general rule, members of a collective bargaining unit must

7   first exhaust contractual grievance procedures before bringing an action for breach of the collective

8   bargaining agreement.").[5] Hoko, in contrast, is not bringing a claim for breach of the CBA. While

9   TASI attempts to color Hoko's claims as claims for breach of contract by arguing his claims are

10  "based upon" and "arise out of" the CBA, Mot. at 3, 8, TASI's argument is misleading. While the

11  Court acknowledges that Hoko does appear to allege at various points in his Complaint that TASI

12  violated some provisions of the CBA[6], his claims are *not* claims for breach of the CBA but rather

13  claims of employment discrimination and retaliation under Title VII. *See* Compl. at 15-17

14  (describing two causes of action in Complaint's "Cause of Action" section).

15          Furthermore, the Court notes that the CBA itself does not preclude Hoko from seeking

16  redress in a judicial forum for his Title VII claims. The Supreme Court has held that a union, when

17  entering into a CBA, may not "prospectively waive" its members' rights to a judicial forum for

18  federal civil rights claims arising under Title VII. *See Alexander v. Gardner-Denver Co.*, 415 U.S.

19  36, 51-52 (1974). The Supreme Court has narrowed this holding but has still held that even as to

20  federal claims for which a union is entitled to prospectively waive a member's statutory right to a

21  judicial forum, the waiver must be "clear and unmistakable." *See Wright v. Universal Maritime*

22  *Service Corp.*, 525 U.S. 70, 77-80 (1998) (finding it unnecessary to determine whether union can

_____

[5] Under the Labor Management Relations Act ("LMRA"), "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce ... or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties...." 29 U.S.C. § 185(a); *Burnside v. Kiewit Pac. Corp.,* 491 F.3d 1053, 1059 (9th Cir. 2007). Under § 185, an individual employee may sue an employer for breach of a contract. Before bringing suit to enforce the terms of a collective bargaining agreement, however, "an employee must first exhaust the grievance procedures established by the CBA." *Sidhu v. Flecto, Inc.,* 279 F.3d 896, 898 (9th Cir. 2002).
[6] *See, e.g.,* Compl. at 5 ("Mr. Hoko was denied the processes mandated by the UTU/TASI contract"); *id.* at 9 ("Mr. Justin Wilson failed to follow the UTU/TASI contract" in awarding a job opening, in "[v]iolation of Rule 12 C, G.").

8

United States District Court
For the Northern District of California

1   prospectively waive members' right to judicial forum for ADA claim, where CBA did not include

2   "clear and unmistakable" language requiring mandatory arbitration of the ADA claim).

3   Additionally, the Supreme Court has held that "*Gardner-Denver* at least stands for the proposition

4   that the right to a federal judicial forum is of sufficient importance to be protected against less-

5   than-explicit union waiver in a CBA." *Wright v. Universal Maritime Serv. Corp.*, 525 U.S. 70, 80

6   (1998); *see also Martinez v. J. Fletcher Creamer & Son, Inc.*, Case No. 10-0968, 2010 WL

7   3359372 at *3 (C.D. Cal. Aug. 13, 2010) (holding that collective bargaining agreement that did not

8   mention any of the statutes at issue did not constitute a "clear and unmistakable" waiver of an

9   employee's right to sue in a judicial forum under those statutes); *Ibarra v. United Parcel Serv.*, 695

10   F.3d 354, 356 (5th Cir. 2012) ("The grievance process established in the CBA forms the exclusive

11   remedy for [plaintiff's] Title VII claim only if the CBA clearly and unmistakably waives

12   [plaintiff's] right to pursue her Title VII claim in a judicial forum.").

13        In the instant case, TASI fails to point to any language in the CBA that constitutes a "clear

14   and unmistakeable" waiver of the right to a judicial forum for Title VII claims. *See generally* Mot.

15   TASI points to Rule 24 of the CBA, entitled "Time Limit on Claims," and alleges that the rule

16   outlines the process of filing a claim by an employee covered by the CBA. Mot. at 4, 8. However,

17   Rule 24 focuses exclusively on claims concerning *compensation*, and thus is irrelevant to Hoko's

18   Title VII claims. CBA at 38-41 ("A claim for compensation alleged to be due may be made only by

19   a claimant . . ."). TASI also cites to Part IV of the CBA, which requires that "any dispute or

20   controversy with respect to the interpretation, application, or enforcement of the provisions of this

21   Agreement which has not been resolved by the parties within thirty days may be submitted by

22   either party to a Special Board of Adjustment for final and binding decision thereon[.]" Mot. at 8

23   (citing CBA at 11). This language does not constitute a "clear and unmistakeable" waiver of the

24   right to a judicial forum for *Title VII claims*. Furthermore, no such waiver of the right to a judicial

25   forum for Title VII claims is apparent from any other language in the CBA, as the CBA is silent as

26   to Title VII claims. Because the CBA does not mention Title VII, the Court finds that the CBA

27   does not waive Hoko's right to sue in court under Title VII. *See Wright*, 525 U.S. at 80; *see also*

28   *Martinez,* 2010 WL 3359372, at *3 (concluding that the plaintiff "was not required to file a

9

1    grievance under the CBA to pursue his statutory claims," given that "the CBA [did] not directly

2    reference the [relevant federal and state wage and hour] statutes at issue, ... [such that it] [did] not

3    'clearly and unmistakably' waive Plaintiff's rights under those statutes").

4          Ultimately, because Hoko has brought two claims under Title VII, Hoko has brought a

5    claim under federal law, and this Court has federal question subject matter jurisdiction over Hoko's

6    two claims. *See* 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil

7    actions arising under the Constitution, laws, or treaties of the United States.).[7] Thus, TASI's

8    motion to dismiss for lack of subject-matter jurisdiction is DENIED.

9                    **2.**      **Failure to State a Claim**

10                     **a.**      **Disparate Treatment Claim**

11         In order to establish a claim for unlawful employment discrimination under Title VII, a

12   plaintiff "must offer evidence that 'give[s] rise to an inference of unlawful discrimination.' " *Hawn*

13   *v. Executive Jet Mgmt., Inc.*, 615 F.3d 1151, 1156 (9th Cir. 2010) (quoting *Godwin v. Hunt*

14   *Wesson, Inc.*, 150 F.3d 1217, 1220 (9th Cir. 1998)). Plaintiffs may establish a prima facie case

15   based on circumstantial evidence by demonstrating: (1) that they belong to a class of persons

16   protected by Title VII; (2) that the plaintiffs were qualified for their positions and performing their

17   jobs satisfactorily; (3) that they experienced adverse employment actions; and (4) that similarly

18   situated individuals outside of their protected class were treated more favorably, or other

19   circumstances surrounding the adverse employment action giving rise to an inference of

20   discrimination. *Hawn*, 615 F.3d at 1156. While Plaintiffs need not include facts sufficient to

21   establish a prima facie case in their complaints, Plaintiff must allege "enough facts to state a claim

22   to relief that is plausible on its face." *See Twombly*, 550 U.S. at 570. TASI moves to dismiss

23   Hoko's disparate treatment claim, and the Court GRANTS TASI's motion with leave to amend.

24         TASI does not challenge that Hoko belongs to a class of persons protected by Title VII, as a

25   Pacific Islander; that Hoko was qualified for his position and performing his job satisfactorily; or

26

---

27   [7] TASI appears to argue that the Federal Arbitration Act compels this Court to find no subject
matter jurisdiction in this case and requires this Court to compel arbitration. Mot. at 6-7. However,
28   TASI does not cite to, nor has this Court found, any provision in the CBA requiring arbitration.
Thus, the Court rejects TASI's argument.

United States District Court
For the Northern District of California

1    that Hoko experienced an adverse employment action. Mot. at 12. Rather, TASI only contends

2    Hoko has inadequately pled that similarly situated individuals outside of Hoko's protected class

3    were treated more favorably. *Id.* More specifically, TASI only contends that Hoko has "fail[ed] to

4    allege the races of the other employees who allegedly received more favorable employment

5    benefits" and that therefore, Hoko has "failed to allege that similarly situated employees outside of

6    his protected category were treated more favorably." *Id.* Below, the Court evaluates whether the

7    Complaint alleges sufficient facts to state a claim with respect to this element.

8             In his Complaint, Hoko alleges that Jackie Britt, Robert Bermudez, and Michael Bird all

9    received preferential treatment when TASI launched a new system for awarding extra shifts to

10   employees in July 2012. Compl. at 3-9. First, Hoko alleges that despite Hoko's "seniority over

11   Jackie Britt and Robert Bermudez," both Britt and Bermudez were awarded extra shifts. *Id.* at 4.

12   Hoko alleges that despite being qualified for the extra shifts, he was "never given the opportunity

13   to apply" and that his later "request to bump Jackie Britt" was "denied" by supervisor Wilson. *Id.*

14   Following this denial, Hoko submitted a claim to TASI management to displace both Britt and

15   Bermudez from their extra shifts. *Id.* at 4-5. Hoko alleges that during a meeting with TASI

16   management concerning this claim, Wilson informed Hoko that "Hoko's claim would have to be

17   approved by his boss." *Id.* at 5. However, Hoko alleges that he later learned that Michael Bird's

18   similar claim "was actually approved by Justin M. Wilson" himself. *Id.* at 5. Hoko further alleges

19   that Hoko is a "Pacific Islander," *id.* at 3, Jackie Britt is "a white woman," *id.* at 3, and that Bird is

20   a "white employee[]." *Id.* at 5. He does not allege the race or national origin of Robert Bermudez.[8]

21            By making these allegations, which this Court must accept as true at this stage, Hoko has

22   sufficiently alleged that at least two individuals (Britt and Bird) outside of his protected class were

23   treated more favorably. Specifically, TASI first awarded Britt (who is white) extra shifts but did

24   not give Hoko the opportunity to apply for the extra shifts. Second, even though both Hoko and

25   Bird (who is white) came to Wilson with similar claims, Wilson personally and immediately

26   approved Bird's claim but informed Hoko that Hoko's claim would "have to be approved by his

27

28   _____
     [8] In his opposition, Hoko states that Bermudez was "not of Pacific Islander decent [sic] as Mr.
     Hoko." Opp'n at 6.

Case No.: 14-CV-01327-LHK
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS WITHOUT PREJUDICE

1    boss." *Id.* at 5. Because Hoko has alleged that these two individuals outside of his protected class

2    were treated more favorably, it is irrelevant that Hoko has failed to allege the race and national

3    origin of Bermudez. Courts in the Ninth Circuit have repeatedly held that plaintiffs who

4    demonstrate that even only one other similarly situated employee outside of plaintiffs' protected

5    class was treated more favorably sufficiently state a claim for disparate treatment. *See, e.g.*,

6    *Mitchell v. Sacramento City Unified Sch. Dist.*, Case No. 11-362, 2011 WL 5299308, at *5-6 (E.D.

7    Cal. Nov. 2, 2011) (holding that a Middle Eastern teacher of Turkish ancestry had stated a claim

8    for disparate treatment in an employment discrimination case by identifying a Caucasian teacher

9    who was treated more favorably). Here, Hoko has alleged that two individuals outside of Hoko's

10   protected class were treated more favorably.[9]

11        Nonetheless, the Court finds that Hoko has failed to allege whether either Britt or Bird are

12   "similarly situated." *See Hawn*, 615 F.3d at 1156. As to Britt, Hoko only alleges that she "was not

13   qualif[ied]" and did not "have the seniority to hold the job" and the Complaint is silent on Bird.

14   Compl. at 4. Generally, in the Ninth Circuit, "individuals are similarly situated when they have

15   similar jobs." *Vasquez v. County of Los Angeles*, 349 F.3d 634, 641 (9th Cir. 2003). The

16   employees' roles need not be identical, but they must be similar "in all material respects." *Moran v.*

17   *Selig*, 447 F.3d 748, 755 (9th Cir. 2006); *see also Nicholson v. Hyannis Air Serv., Inc.*, 580 F.3d

18   1116, 1125 (9th Cir. 2009) (holding that male pilots who also failed portions of their training at

19   Flight Safety and were then given additional training and a second opportunity to pass that portion

20   of the training were similarly situated to a female pilot who wasn't given a second opportunity to

21   pass the training); *Hosea v. Donley*, Case No. 11-02892, 2013 WL 144723, at *4 (N.D. Cal. Jan.

22   11, 2013) (holding that security guards at the same civil service pay scale ranking of GS–06 were

23   "similarly situated"). At no point does Hoko allege or attempt to show that either Britt or Bird had

24   similar jobs or had roles that were similar to Hoko's role in all material respects. Therefore, the

---

[9] Hoko also appears to allege that Mr. More and a woman named "Adriana" also received
preferential treatment, though Hoko's Complaint is not entirely clear on this point. Compl. at 9-10,
16. He also appears to allege that Mr. Halla and Mr. Shreader were also treated more favorably
because they were not subjected to drug testing. Compl. at 16. Nonetheless, Hoko does not allege
the race or national origin of Adriana, Mr. More, Mr. Halla, or Mr. Shreader in his Complaint.

12

Case No.: 14-CV-01327-LHK
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS WITHOUT PREJUDICE

United States District Court
For the Northern District of California

1  Court finds Hoko has failed to allege whether *similarly situated* individuals outside of Hoko's

2  protected class were treated more favorably.

3      Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "shall be freely

4  given when justice so requires." *Lopez*, 203 F.3d at 1127. However, a court may "deny leave to

5  amend due to 'undue delay, bad faith or dilatory motive on part of the movant, repeated failure to

6  cure deficiencies by amendments previously allowed, undue prejudice to the opposing

7  party . . . ,[and] futility of amendment.' " *Carvalho*, 629 F.3d at 892-93. Because this is Hoko's

8  first Complaint, granting leave to amend would not unduly prejudice TASI, and no undue delay or

9  bad faith has been shown. In addition, if Hoko can allege that similarly situated individuals outside

10  of Hoko's protected class were treated more favorably, an amendment would not be futile.

11  Therefore, TASI's motion to dismiss Hoko's disparate treatment claim is GRANTED with leave to

12  amend.

13                          **b.      Retaliation Claim**

14      To state a claim for retaliation under Title VII, a plaintiff must demonstrate that: "(1) the

15  employee engaged in a protected activity, (2) she suffered an adverse employment action, and (3)

16  there was a causal link between the protected activity and the adverse employment decision."

17  *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1093-94 (9th Cir. 2008). TASI moves to dismiss Hoko's

18  retaliation claim, and the Court GRANTS TASI's motion with leave to amend.

19      Conduct constituting a "protected activity" includes filing a charge or complaint, testifying

20  about an employer's alleged unlawful practices, and "engaging in other activity intended to oppose

21  an employer's discriminatory practices." *Raad v. Fairbanks N. Star Borough Sch. Dist.*, 323 F.3d

22  1185, 1197 (9th Cir. 2003) (citing 42 U.S.C. § 2000e-3(a) (internal quotation marks omitted)).

23      As to the second factor, "adverse employment action" has been interpreted to mean "any

24  adverse treatment that is based on a retaliatory motive and is reasonably likely to deter the charging

25  party or others from engaging in protected activity." *Ray v. Henderson*, 217 F.3d 1234, 1242-43

26  (9th Cir. 2000) (adopting the EEOC test for determining whether an act constitutes an "adverse

27  employment action," as set forth in EEOC Compliance Manual Section 8, "Retaliation," ¶ 8008

28  (1998)). The Ninth Circuit has "found that a wide array of disadvantageous changes in the

13

workplace constitute adverse employment actions." *Ray*, 217 F.3d at 1240. Examples include

termination, lateral transfer, and unfavorable performance reviews. *See Davis*, 520 F.3d at 1094

(noting that termination is an adverse employment action); *Hashimoto v. Dalton*, 118 F.3d 671, 674

(9th Cir. 1997) (finding that "dissemination of adverse employment references" constitutes an

adverse employment action); *Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir. 1987) ("Transfers

of job duties and undeserved performance ratings . . . constitute adverse employment decisions."

(internal quotations omitted)).

Finally, the "causal link" between protected activity and adverse employment action may

be "inferred from circumstantial evidence, such as the employer's knowledge that the plaintiff

engaged in protected activities and the proximity in time between the protected action and the

allegedly retaliatory employment decision." *Yartzoff*, 809 F.2d at 1375.

Here, TASI only contends that Hoko fails to allege that Hoko engaged in a protected

activity. Mot. at 12. Specifically, TASI contends that Hoko alleges that "the activity that caused the

alleged retaliation was [Hoko's] refusal to sign a settlement agreement." *Id*. Below, the Court

evaluates whether the Complaint alleges sufficient facts to state a claim with respect to this

element.

In the "Retaliation" section of Hoko's Complaint, Hoko alleges that "during [Hoko's]

meeting with Dewayne Quock and Peter, Mr. Hoko expressed to Dewayne and Peter that the

settlement document prepared by TASI [was] discriminatory and refused to sign it." Compl. at 16.

Hoko then proceeds to allege various adverse employment actions that TASI took in retaliation for

his refusal to sign the settlement document, including "coercing Mr. Hoko . . . to sign the

[settlement] document," denying Hoko's "Care Program Time Slips" claims, ordering that "Mr.

Hoko get drug tested" and "promoting Mr. More to Conductor in order to prevent Mr. Hoko from

working during the day shift on a big money job[.]" Compl. at 9-17. It thus appears that Hoko

alleges that his protected activity was his refusal to sign the settlement agreement that would bar

him from bringing a discrimination claim. It is well established that protected activities include

filing a charge or complaint of discrimination, testifying about an employer's alleged unlawful

practices, and opposing any practice made unlawful under the employment discrimination statutes.

Case No.: 14-CV-01327-LHK
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS WITHOUT PREJUDICE

See Raad, 323 F.3d at 1197. However, Hoko has not cited—nor has this Court found—case law holding or suggesting that refusal to sign a settlement agreement concerning a discrimination claim that would bar the signatory from later litigating that same claim constitutes a protected activity. Therefore, the Court concludes Hoko has failed to allege that Hoko engaged in a protected activity, and thus GRANTS TASI's motion to dismiss the retaliation claim.

Nonetheless, the Court grants leave to amend because Hoko may be able to allege a protected activity that could form the basis of his retaliation claim. Indeed, it appears that in other parts of his Complaint, Hoko alleges other protected activities which could form the basis of his claim. For example, Hoko alleges that on October 11, 2012, Hoko sent an email to Dewayne Quock in TASI's Human Resources to "express to Dewayne that TASI ha[d] violated his Federally Protected Rights under the Title VII of the Civil Rights Act of 1964." Compl. at 6. Hoko further alleges that as a result of this email, TASI management was aware of Wilson's "discriminatory behavior" on October 11, 2012. Id. at 9. Courts in the Ninth Circuit have held that even informal complaints of discrimination to a human resources department is sufficient to allege protected activity. See, e.g., Ray, 217 F.3d at 1240 n.3 (noting that informal complaints constitute protected activity under Title VII); Luckey v. Visalia Unified Sch. Dist., Case No. 13-332, 2014 WL 730699 at *3 (E.D. Cal. Feb. 24, 2014) (holding that plaintiff's allegations that he made informal complaints to human resources that plaintiff, a school district employee, was isolated from other staff and students by the principal and that such treatment was based on plaintiff's race and sex were sufficient to state a claim for retaliation under Title VII). Therefore, Hoko's allegations that Hoko sent an email the TASI human resources department expressly alleging that TASI had engaged in a discriminatory behavior may form an alternate basis for Hoko's retaliation claim. Furthermore, both the Complaint and Opposition indicate that Hoko filed a charge of discrimination with the EEOC in May 2013 prior to at least some of the retaliatory actions alleged in the Complaint. Compl. at 2, 17 (alleging that Hoko's Care Program Time Slip claim was denied in June 2013); Opp'n at 9. Filing a charge of discrimination with the EEOC may form an additional alternate basis for Hoko's retaliation claim. See Miller v. Fairchild Indus., Inc., 797 F.2d 727, 731 (9th Cir. 1986) ("[T]he filing of discrimination charges with the EEOC constitute[s] a protected

15

United States District Court
For the Northern District of California

1   activity"). Thus, the Court grants Hoko leave to amend to clarify, in his retaliation cause of action

2   section of his Complaint, whether his informal complaint to the human resources department or his

3   charge with the EEOC forms the basis of his retaliation claim.[10]

4   **IV.     CONCLUSION**

5          For the foregoing reasons, the Court GRANTS TASI's Motion to Dismiss Hoko's Title VII

6   disparate treatment and retaliation claims without prejudice. Hoko shall file any amended

7   complaint within 21 days of this Order. Hoko may not add new causes of action or parties without

8   a stipulation or order of the Court under Rule 15 of the Federal Rules of Civil Procedure. Failure to

9   cure deficiencies will result in dismissal with prejudice.

10

11  **IT IS SO ORDERED.**

12  Dated: August 13, 2014

13                                                    LUCY H. KOH
                                                      United States District Judge

Case No.: 14-CV-01327-LHK
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS WITHOUT PREJUDICE